```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


OMEGA CONSULTING, as            §
assignee of CHAMBERLAIN,        §
HRDLICKA, WHITE,                §
                                §
            Plaintiff,          §
                                §
v.                              §   CIVIL ACTION NO. H-09-0976
                                §
RAYMOND INTERNATIONAL           §
COMPANY,                        §
                                §
            Defendant.          §
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Omega Consulting ("Omega") brought this action on March 31, 2009, as an assignee of Chamberlain, Hrdlicka, White ("Chamberlain") against Raymond International Company ("Raymond") alleging breach of fiduciary duty, breach of contract, gross mismanagement, and waste (Docket Entry No. 1). On June 30, 2009, the court entered a default judgment for Omega (Docket Entry No. 11). Although there are no formal motions pending before the court, on March 31, 2010, the court received a letter from the Attorney General of Texas (Docket Entry No. 18) that the court construed as a motion to intervene on behalf of the Texas Comptroller of Public Accounts (Docket Entry No. 19). The court will not rule on the motion at this time, however, because the motion appears to be moot. Upon further consideration of the pleadings, the court has concluded that Omega never pleaded an

amount in conflict sufficient to satisfy the jurisdictional requirement for diversity of citizenship jurisdiction. Furthermore, the facts alleged in Omega's Complaint do not establish complete diversity of citizenship between the parties. The court concludes that it may have lacked original subject matter jurisdiction over the action, which would render the default judgment void. The court will therefore order Omega to respond within twenty days with any arguments or evidence it can present that would establish that subject matter jurisdiction existed.

### I. Factual and Procedural Background

This action concerns an attempt by Omega to collect a twenty-year-old debt owed by Raymond to Chamberlain, which Chamberlain assigned to Omega. Omega alleged in its March 31, 2009, Complaint:

> Upon information and belief, Assignor, Chamberlain, Hrdlicka, White, has been owed the principal amount of $34,630.03, based on a recognized scheduled and/or filed claims against said Defendant Raymond International since at least August 14, 1989, and neither that original debt, nor interest totaling $196,377.28 from August 14, 1989 through March 30, 2009 has been paid. Such total amount of $231,007.31 remains outstanding. That unpaid debt and claims against Defendant Raymond International has been assigned to Omega Consulting by a duly executed assignment on March 25, 2009.[1]

Omega asserted that jurisdiction existed based on diversity of citizenship, and claimed that the amount in controversy requirement

---

[1] Complaint, Docket Entry No. 1, ¶ 11.

for diversity jurisdiction was met by the demand for $231,007.31.[2]

## A. The Default Judgment

Raymond, which is no longer in business, did not answer the Complaint. On June 12, 2009, the Clerk entered a default (Docket Entry No. 8). On June 18, 2009, Omega filed a Motion for Final Judgment (Docket Entry No. 9). The motion, which names the defendant as "Raymond International Builders Inc a/k/a Raymond International Inc," specifies a different measure of damages than was stated in the original Complaint:

> Plaintiff's complaint is for a sum certain or for a sum which can by computation be made certain. Said debt was a listed as [sic] a scheduled claim in Raymond International Builders, Inc.'s bankruptcy, which was later dismissed. . . . Those damages total $105,444.31, which represents principle [sic] damages of $15,887.90, plus interest at the state of Texas' judgment interest rate at the time of the scheduled claim of 10% per annum totaling $89,556.41 from August 14, 1989 through June 18, 2009.[3]

The motion also contains an exhibit showing scheduled claims against Raymond in its 1989 Chapter 11 bankruptcy filing for $15,831.65 to Chamberlain, Hrdlicka, White and $56.25 to

---

[2]Id. ¶¶ 5-7.

[3]Motion for Final Judgment, Docket Entry No. 9, ¶ 9.

Chamberlain, Hrdlicka, White, Johnson.[4] The sum of these amounts is Omega's claimed principal debt of $15,887.90. On June 30, 2009, the court entered a default judgment for Omega (Docket Entry No. 11).

On July 24, 2009, Omega moved to have a receiver appointed to collect unclaimed property from the Texas Comptroller's custody on Raymond's behalf (Docket Entry No. 12). An exhibit attached to the motion contained a schedule of claims against Raymond from its 1989 Chapter 11 bankruptcy showing claims by Chamberlain, Hrdlicka, White for $10,755.13 and $62.50; the schedule of claims is preceded by the same Chapter 11 petition that accompanied the Motion for Final Judgment.[5] Omega has offered no explanation for the discrepancy in the amounts of the listed claims. On August 3, 2009, the court adopted the Order provided by Omega with one amendment (Docket Entry No. 15). The Order appointed Richard Parker as receiver for Raymond, and contained the statement, "3. Any third party, financial institution, financial administrator, or clerk that fails to acknowledge the authority granted to the

---

[4] Original Petition Under Chapter 11, Exhibit A to Motion for Final Judgment, Docket Entry No. 9.

[5] Original Petition Under Chapter 11, Exhibit B to Plaintiff's Unopposed Motion for Appointment of Receiver for Raymond International Company, Docket Entry No. 12.

receiver shall be subject to orders of contempt, fines, and punishment."[6]

Upon further consideration, the court concludes that the language included in paragraph three of the Order was not necessary to grant Omega relief. It may not be necessary to amend the Order, however, because the Order is void if the court lacks subject matter jurisdiction.

### B. The Attorney General's Letter

On October 2, 2009, and January 14, 2010, Parker filed reports to the court detailing his efforts as receiver to obtain from the Texas State Comptroller's Office unclaimed property that was allegedly owed to Raymond (Docket Entry Nos. 16 and 17). Parker stated that the Comptroller's Office had denied the requests on the grounds that Chamberlain's claims against Raymond had been discharged in bankruptcy. Parker further stated that he had filed suit on November 30, 2009, in Travis County District Court to appeal the Comptroller's decision.

On March 31, 2010, the court received a letter from the Texas Attorney General detailing his objections to Omega's claims against the Comptroller, and requesting the court to amend its August 3, 2009, Order, which could be interpreted to subject the Comptroller "to orders of contempt, fines, and punishment" if it refused to

---

[6]Order Appointing Receiver, Docket Entry No. 15, ¶ 3.

honor Parker's requests for the unclaimed property (Docket Entry No. 18). Because the Attorney General is not a party to this action and therefore may not have standing to move for an amendment, the court construed the letter as a motion to intervene (Docket Entry No. 19). Omega responded in opposition to the motion on April 26, 2010 (Docket Entry No. 20). The Attorney General filed a Supplement to Motion to Intervene on May 20, 2010, arguing that Omega did not properly serve Raymond, but making no response to Omega's arguments that intervention is improper (Docket Entry No. 21). The court will not consider the motion to intervene at this time, however, because the motion is moot if the court lacks subject matter jurisdiction.

## II. <u>Subject Matter Jurisdiction</u>

It appears that subject matter jurisdiction may never have existed in this action. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Although the court has already entered a final judgment, Rule 12(h)(3) makes it clear that a court may inquire into subject matter jurisdiction "at any time." If the court concludes that subject matter jurisdiction was lacking in this action, then the default judgment and any orders entered in the action are void. <u>See</u> Charles Alan Wright, Arthur Miller, and Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 2695 Relief from

Default Judgment (3d ed. 1998) ("Clearly, the lack of subject-matter jurisdiction renders a default judgment a nullity.").

## A. The Jurisdictional Requirement

Omega pleaded in its Complaint that diversity of citizenship jurisdiction exists under 28 U.S.C. § 1332. The statute provides that district courts shall have original jurisdiction over civil actions where there is complete diversity of citizenship and where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The relevant phrase here is "exclusive of interest," which generally excludes the consideration of interest when determining whether the amount in controversy meets the jurisdictional minimum. See Charles Alan Wright, Arthur Miller, and Edward Cooper, Federal Practice and Procedure, § 3712 Interests and Costs (3d ed. 2009) ("The cases make it clear that the jurisdiction statutes require exclusion not only of interest that accrues after the action is brought but also interest that has accrued prior to the filing of the complaint."). The apparent purpose of excluding interest in calculating the jurisdictional amount is to prevent the plaintiff from delaying suit until the claim, with accrued interest, exceeds the statutory minimum. Brainin v. Melikian, 396 F.2d 153, 155 (3d Cir. 1968); Roberts v. Chandaleur Homes, Inc., 237 F. Supp.2d 696, 697 (S.D. Miss. 2002). To count interest charges toward the jurisdictional minimum in this action, in which the plaintiff seeks

interest on a debt more than twenty years after it was incurred, would appear to fly in the face of the apparent rationale for the rule.

Courts have included interest in the calculation of the amount in controversy under certain limited circumstances. In <u>Brown v. Webster</u>, 15 S. Ct. 377 (1895), the Supreme Court distinguished between "interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand." In <u>Brown</u>, interest on the purchase price of property was included in the calculation of the plaintiff's damages for eviction from the property, and was thus "an essential ingredient in the one principal claim" -- that is, the claim for eviction damages -- rather than "a mere accessory thereto." <u>Id.</u> at 377-78. Courts have held that interest may be considered an element of damages when the "interest is owed as part of an underlying contractual obligation." <u>Transaero, Inc. v. La Fuerza Area Boliviana</u>, 24 F.3d 457, 461 (2d Cir. 1994). Interest is deemed to be part of an underlying contractual obligation, for example, when a plaintiff sues to collect on a bond coupon. <u>Edwards v. Bates County</u>, 16 S. Ct. 967, 968 (1896). Post-maturity interest on the bond, however, is excluded. <u>Greene County v. Kortrecht</u>, 81 F. 241, 241 (5th Cir. 1897). Courts have held interest to be an essential component of the principal claim when a plaintiff sued for damages and injunctive relief under a state usury law, <u>Parris v. Mego Mortg. Corp.</u>, 14 Fed. Appx. 394, 397 n.2

-8-

(6th Cir. 2001), and when a plaintiff sued for rescission of a loan agreement, Chandaleur Homes, 237 F. Supp.2d at 698. When interest is sought merely as an accessory to an underlying injury and not as part of the principal demand, however, it should not be included in the amount in controversy. Brown, 15 S. Ct. at 377. See also Danial v. Daniels, 162 Fed. Appx. 288, 290 (5th Cir. 2006) ("Interest is only considered for jurisdictional purposes where it is a basis for the suit itself.").

### B.   Omega's Principal Claim

Upon reviewing Omega's pleadings, the court concludes that Omega never pleaded an amount in controversy that "exceeds the sum or value of $75,000, exclusive of interest and costs." Omega stated in its Complaint that the "original debt" was $34,630.03.[7] In its Motion for Final Judgment Omega stated that the debt was $15,887.90,[8] and it provided the schedule of claims from Raymond's Chapter 11 Petition in support of this number. In its Motion for Appointment of Receiver Raymond provided a different schedule of claims, apparently from the same petition, showing Chamberlain's total claim as $10,817.63.[9] Omega provides no explanation for the different figures representing Chamberlain's claim. What is clear

---

[7]Complaint, Docket Entry No. 1, ¶ 11.

[8]Motion for Final Judgment, Docket Entry No. 9, ¶ 9.

[9]Original Petition Under Chapter 11, Exhibit B to Plaintiff's Unopposed Motion for Appointment of Receiver for Raymond International Company, Docket Entry No. 12.

-9-

is that none of the individual figures for the original debt, or even all three of them combined, exceeds the sum of $75,000.

Omega has provided no evidence that the interest charges it seeks on the debt are "a basis for the suit itself" or are "part of an underlying contractual obligation." To the contrary, Omega states that the interest payments are calculated "at the state of Texas' judgment interest rate at the time of the scheduled claim of 10% per annum,"[10] which suggests that there is no contractual basis for the interest claims. It appears that the interest charges are merely an accessory to the principal claim. Unless Omega can prove otherwise, the court will conclude that Omega's claims fail to meet the jurisdictional requirement specified in 28 U.S.C. § 1332(a).

### C. Diversity of Citizenship

It further appears that subject matter jurisdiction may be lacking because there may not be complete diversity of citizenship. Diversity jurisdiction only exists when there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1); <u>Stiftung v. Plains Marketing, L.P.</u>, 603 F.3d 295, 297 (5th Cir. 2010). In determining the citizenship of a corporation, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

---

[10]Motion for Final Judgment, Docket Entry No. 9, ¶ 9.

It appears that both Raymond and Omega are citizens of Texas. In its Complaint Omega asserts that it is "a sole proprietorship existing under the laws of the State of Texas and has a principal place of business at 7706 Pinebrook Drive; San Antonio, Texas 78230."[11] Omega's Complaint states that Raymond is a Delaware corporation, but in the allegations concerning venue Omega states, "the defendant's principal address is in the district [i.e., the Southern District of Texas], and it has transacted substantial business in the District."[12] The logical interpretation of this allegation is that Raymond's principal place of business is in Texas. Furthermore, the Chapter 11 Petition Omega attached to its Motion for Final Judgment states, "1. Petitioner's address is 2801 Post Oak Blvd., Houston Texas 77056. 2. Petitioner has had its principal place of business or principal assets within the District for the 180 days immediately proceeding the filing of this Petition."[13] Thus, Omega's pleadings and the supporting evidence both strongly suggest that Raymond's principal place of business was in Texas, and therefore that Raymond was considered a citizen of Texas for purposes of 28 U.S.C. § 1332. Unless Omega can demonstrate otherwise, the court will conclude that the court

---

[11]Complaint, Docket Entry No. 1, ¶ 1.

[12]Id. ¶ 6.

[13]Original Petition Under Chapter 11, Exhibit B to Plaintiff's Unopposed Motion for Appointment of Receiver for Raymond International Company, Docket Entry No. 12.

-11-

lacked subject matter jurisdiction over this action because the parties were not diverse.

### III. Conclusion and Order

For the reasons explained above, the court concludes that the facts alleged in Omega's Complaint do not satisfy the requirements of 28 U.S.C. § 1332(a) for either the amount in controversy or complete diversity of citizenship. Unless Omega can demonstrate otherwise, the court will conclude that it never had subject matter jurisdiction over this action, and accordingly will declare the Default Judgment (Docket Entry No. 11) to be void. Omega is **ORDERED** to respond by August 16, 2010, with any arguments or evidence it can produce that establish that the court has subject matter jurisdiction over this action. Given the age of this action and the importance of determining whether jurisdiction exists, it is unlikely that this date will be extended.

**SIGNED** at Houston, Texas, on this 29th day of July, 2010.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE